UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WESTCON GROUP, INC. NKA, WESTCON-
COMSTOR AMERICAS, A DIVISION OF
SYNNES CORPORATION,

                              Plaintiff,

v.

CCC TECHNOLOGIES, INC., et al.,

                              Defendants.
-----------------------------------------------------------X

**MEMORANDUM OPINION AND ORDER**

No. 19-CV-02303 (PMH)

PHILIP M. HALPERN, United States District Judge:

Westcon Group, Inc. ("Plaintiff") brings this action for conversion and breach of contract against CCC Technologies, Inc. ("CCC"), Venus E. Rodriguez ("Mrs. Rodriguez"), Juan R. Rodriguez ("Mr. Rodriguez"), James Poull ("Mr. Poull"),[1] and Gerri Poull ("Mrs. Poull") (Mr. Rodriguez, Mrs. Rodriguez, and Mrs. Poull, collectively, "Individual Defendants," and with CCC, "Defendants"). (Doc. 7, "Compl.").

Pending presently before the Court are cross-motions for summary judgment under Federal Rule of Civil Procedure 56: Plaintiff's motion for summary judgment seeks an award of damages on its claims for relief (Doc. 88; Doc. 89, "Pl. Br."); and Defendants' motion for summary judgment seeks dismissal of the claims asserted against the Individual Defendants (Doc. 84; Doc. 84-1 "Def. Br."). Defendants' opposition to Plaintiff's motion was, as directed by the Court, presented in a single brief together with their motion in chief. (*See* Def. Br.). Plaintiff, likewise and as directed by the Court, opposed Defendants' motion and set forth its reply in further support

---

[1] The parties advised the Court that Mr. Poull was discharged from bankruptcy under 11 U.S.C. § 727 on May 11, 2021. Plaintiff, recognizing that the bankruptcy discharge precludes it from proceeding against Mr. Poull in this action, "only seeks a judgment jointly and severally against Geraldine Poull, Venus Rodriguez, Juan Rodriguez and CCC Technologies, Inc." (Doc. 85 at 1 n.1).

Case 7:19-cv-02303-PMH   Document 92   Filed 09/12/22   Page 2 of 12

of its motion in a single brief. (Doc. 85, "Pl. Opp."). The motions, opposition thereto, and Defendants' reply brief in further support of their motion for summary judgment (Doc. 87, "Reply") were filed on September 23, 2021.[2]

For the reasons set forth below, Plaintiff's motion is GRANTED in PART and Defendant's motion is GRANTED.

## BACKGROUND

CCC entered into a computer reseller agreement with Plaintiff on September 4, 2015. (Doc. 79-1, "56.1" ¶ 1). The parties had a business relationship whereby Plaintiff provided certain goods and services to CCC which CCC accepted for resale to its end-user customers. (Compl. ¶ 2; Doc. 30, "Ans." ¶ 2; Doc. 90, "Kley Decl." ¶ 4). Over the life of the parties' relationship, CCC placed orders for more than $7.4 million worth of products, services, and software. (Doc. 83-4, "Siess Tr." at 67:6-68-7). CCC owed Plaintiff some disputed amount on its accounts—Plaintiff contends the amount was $1,092,964.09, while Defendant acknowledges only that the amount was $365,254.95. (*See* Def. Br. at 10). Due to the outstanding balance, Plaintiff was unwilling to "front products and services" without the Individual Defendants' personal guarantees, and on November 3, 2016, Mr. and Mrs. Poull signed a personal guarantee (Doc. 7-3) and Mr. and Mrs. Rodriguez signed a personal guarantee (Doc. 7-2) to secure the creditworthiness of CCC. (56.1 ¶¶ 5, 9).

With respect to one of CCC's end-users, Froedtert Hospital ("Froedtert"), the parties came to an arrangement whereby CCC would issue the purchase orders to Plaintiff who would provide the requested goods and/or services and, instead of remitting payment to CCC, Froedtert would

---

[2] The parties filed their motion papers on September 23, 2021, but due to technical deficiencies, the Clerk's Office rejected many of those filings. Some of the motion papers were re-filed properly on October 7, 2021 and others were not. The Court ignores the technical deficiencies for purposes of resolving the extant motions and considers the parties' submissions but only to the extent the law permits, as further discussed *infra*.

2

pay Plaintiff directly by depositing its payment into a lockbox account. (Doc. 74-2, "Rodriguez Tr." at 25:25-26:18). That payment arrangement existed to allow CCC to continue servicing Froedtert while working down CCC's deficit with Plaintiff. (*Id*. at 26:19-25). As of April 25, 2018, Froedtert had deposited no less than $854,632.30 into the lockbox in exchange for the goods and services it received during the relevant time period. (56.1 ¶¶ G, H).[3]

At some point in or about July 2017, CCC determined it would no longer order items from Plaintiff and was instead purchasing goods through a new, different distributor. (Rodriguez Tr. at 33:8-13). CCC discussed paying back its deficit to Plaintiff through a payment plan, but no such plan ever materialized. (*Id*. at 33:14-34:7).

This litigation followed.

## **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-03875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting

---

[3] The paragraphs of Defendants' "Assertions of Additional Material Facts" in the Rule 56.1 Statement are identified by letter instead of continuing the numbering from Plaintiff's statements of fact.

3

*Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 Fed. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 Fed. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New*

*York*, 74 Fed. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her . . . claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

As an initial matter, Rule 7.1(a)(3) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules") provides that "[e]xcept for letter-motions as permitted by Local Rule 7.1(d) or as otherwise permitted by the Court, all motions shall include the following motion papers . . . [s]upporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion."

Most of the exhibits that the parties submitted to the Court on these motions do not include a supporting affidavit and are attached only as exhibits to the memoranda of law (except for three exhibits annexed to Ms. Kley's declaration). All of the other exhibits—which include deposition transcripts, signed and unsigned contracts, letters, e-mails, invoices, discovery demands and responses, SEC filings, and so forth—were annexed to memoranda of law, and in some cases, annexed either to a motion that had previously been denied for failure to comply with the Court's rules (*see* Doc. 74; Doc. 75; Pl. Br. at 1 ("Plaintiff reincorporates its previously filed Motion for Summary Judgment (ECF 74)")) or to a motion that is not technically pending before the Court because it was improperly filed and the deficiency never remedied (*see* Doc. 84; Doc. 91). Failure to comply with the Local Rules is, on its own, a sufficient ground to warrant denial of a motion. *See, e.g., U.S. Bank Tr., N.A. v. Monroe*, No. 15-CV-01480, 2017 WL 923326, at *6 (N.D.N.Y.

Mar. 8, 2017) ("The Court may deny a motion because of the moving party's failure to comply with the Local Rules." (collecting cases)).

Based on the parties' presentation of their respective motions, the Court is unable to consider many of the exhibits submitted which are absent from the Rule 56.1 Statement, unsupported by affidavit, and purportedly supporting facts raised for the first time in counsel's memoranda of law. *See Outerbridge v. Tobon*, No. 11-CV-03843, 2012 WL 2553497, at *3 (S.D.N.Y. July 3, 2012), *adopted by* 2012 WL 2952931 (S.D.N.Y. July 19, 2012) (holding that because "no affidavit was filed in support of the motion . . . factual assertions in the defendants' memorandum of law that are not supported by evidence will not be considered by the Court.").

Furthermore, the parties "cannot simply dump papers on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain." *Emanuel v. Gap.*, No. 19-CV-03617, 2022 WL 3084317, at *5 (S.D.N.Y. Aug. 3, 2022) (quoting *Mirza v. Garnet Health*, No. 20-CV-00556, 2022 WL 826410, at *2 n.6 (S.D.N.Y. Mar. 17, 2022)). "Judges are not like pigs, hunting for truffles buried in briefs or the record." *Sea Trade Mar. Corp. v. Coutsodontis*, No. 09-CV-00488, 2015 WL 4998638, at *4 (S.D.N.Y. Aug. 20, 2015). The parties should not expect any court to rummage through a muddled mass of papers like those here which were, for the most part, improperly filed on this docket, and the Court declines to formulate its own evidentiary foundation based upon unsworn statements contained in one of the parties' briefs. In any event, but only to the extent the law permits, the Court considers the parties' motions.

Plaintiff seeks summary judgment in its favor on its two claims for relief sounding in conversion and breach of contract. (Compl. ¶¶ 9-20). Plaintiff, in essence, contends that CCC received products for itself and its customers through Plaintiff pursuant to agreements between the parties for which Defendants failed and refused to tender payment to Plaintiff. Defendants, as

relevant to their motion, press as their Second Affirmative Defense failure of the alleged personal guarantees upon which Plaintiff premises the Individual Defendants' liability in this action. (Ans. at 4). As such, Defendants seek summary judgment on that defense, dismissing the claims for relief insofar as alleged against the Individual Defendants.

The Court takes each of the parties' arguments in turn.

I. Conversion

The tort of conversion is the "'exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession.'" *Citadel Mgmt. Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000) (quoting *Lopresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997)). To establish a conversion claim, under New York law,[4] a plaintiff must prove: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (quotation and citation omitted). "While New York recognizes that money is the sort of property that may be the subject of a conversion action, the money must be held in a 'specific, identifiable fund and [subject to] an obligation to return or otherwise treat in a particular manner the specific fund in question.'" *Citadel Mgmt. Inc.*, 123 F. Supp. 2d at 147 (quoting *High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998)).

---

[4] The Court applies New York law for this analysis. The parties' briefs all assume that New York substantive law governs the conversion claim. If "[t]he parties' briefs assume that New York substantive law governs the issues . . . such implied consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)).

Under New York law, a tort cause of action—such as conversion—that is based on the same facts underlying a contract claim is duplicative of the contract and thus subject to dismissal. *See AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*, No. 04-CV-08832, 2007 WL 2962591, at *5 (S.D.N.Y. Oct. 10, 2007) (quoting *Reade v. SL Green Operating P'ship, LP*, 817 N.Y.S.2d 230, 231 (App. Div. 2006)). It is beyond cavil that "an action for conversion cannot lie where damages are merely sought for breach of contract." *Citadel Mgmt. Inc.*, 123 F. Supp. 2d at 148. "[T]o sustain a conversion claim, a plaintiff must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." *Fraser v. Doubleday & Co.*, 587 F. Supp. 1284, 1288 (S.D.N.Y. 1984).

Defendants argue that this is a breach of contract case, not a tort case. The Court agrees. Plaintiff's conversion claim is duplicative of its breach of contract claim. The identical set of facts apply to both claims, and—with the exception of Plaintiff's demand for punitive damages available only in connection with the conversion claim—both claims seek identical damages. In other words, the conversion claim is indistinguishable from, or at least redundant to, the contract claim. It is generally for that reason that a plaintiff cannot turn a contract claim into a tort claim arising from alleged wrongdoing indistinct from the breach of contract. *See Int'l Bus. Machs. Corp. v. De Freitas Lima*, No. 20-CV-04573, 2020 WL 5261336, at *14 (S.D.N.Y. Sept. 3, 2020), *aff'd sub nom. Int'l Bus. Machs. Corp. v. Lima*, 833 F. App'x 911 (2d Cir. 2021).

It is also the case, however, that if the plaintiff can recover punitive damages under a conversion claim and cannot recover punitive damages under a breach of contract claim, then the punitive damages constitute unique recovery under the conversion claim and the claim is not duplicative of the breach of contract claim. *Fraser*, 587 F. Supp. at 1289. Defendants argue that

Plaintiff has failed to make the requisite showing to justify an award of punitive damages. (Def. Br. at 14).

An award of punitive damages will not be supported in the absence of proof that the defendant's conduct was malicious or reckless, or amounted to a pattern of behavior aimed at the public in general or that rendered the actions a public wrong, or where such conduct did not amount to a wanton or reckless disregard of the plaintiff's rights. *See* 23 N.Y. Jur. 2d Conversion, Etc. § 75. The record in this case is devoid of proof of the type of behavior warranting an award of punitive damages. Indeed, Plaintiff explained that there was confusion on both sides as to how the parties were arriving at their account balance numbers and that there was nothing that would indicate any malicious refusal or ill-intent on CCC's part to not pay what was owed. (Siess Tr., at 63:23-64:18).

As Plaintiff cannot recover punitive damages on this record, and "[e]ven if [Plaintiff] could show that [Defendants] intentionally or maliciously breached [their] contractual duties, it 'has always been held that punitive damages are not available for mere breach of contract, for in such a case only a private wrong, and not a public right, is involved.'" *Fraser*, 587 F. Supp. at 1289. Accordingly, Plaintiff's conversion claim must fail.

II. Breach of Contract

"Under New York law, a breach of contract claim requires (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 209 (S.D.N.Y. 2020) (quoting *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017)). There appears to be no dispute that CCC entered into the September 4, 2015 computer reseller agreement with Plaintiff and that CCC owed a balance to

Plaintiff on CCC's accounts (56.1 ¶¶ 1, 14; Rodriguez Tr. at 26:19-25, 31:15-25, 33:5-7). Defendants raise only two disputes in connection with the breach of contract claim against CCC: (1) whether invoices issued by Plaintiff after July 2017 were valid and authorized; and (2) whether the amounts paid on the Froedtert account were correctly applied to CCC's outstanding account balance. Under these circumstances, Plaintiff has established that it is entitled to summary judgment on liability on its second claim for relief for breach of contract against CCC. Damages to which Plaintiff is entitled, if any, is an issue riddled with factual disputes unresolved at the summary judgment stage. That issue will, therefore, proceed to trial.

III.     Guarantees

Plaintiff's second claim for relief is also pressed against the Individual Defendants through the personal guarantees that they signed. (*See generally* Compl.; Doc. 7-2; Doc. 7-3). The glaring problem—which the Court specifically discussed with counsel at the pre-motion conference in this case on August 5, 2021—is that the guarantees state on their face that they are presented "[i]n order to induce WGNA to enter into the attached credit application and Terms and Conditions of Sale." (*See* Doc. 7-2; Doc. 7-3). Plaintiff is not referenced in the guarantees; WGNA is not a party to this litigation nor defined in the guarantees; WGNA is not referenced in the September 4, 2015 computer reseller agreement; and there is no credit application agreement annexed to the guarantees. There is no affidavit by an individual with personal knowledge of the relationship, if any, between Plaintiff and WGNA that has been provided to the Court.

Plaintiff urges the Court to accept that WGNA assumed Plaintiff, its subsidiaries, and affiliates, through a Notice of Assignment. (Pl. Opp. at 5-7). Even were the Court permitted under the law to accept Plaintiff's counsel's statements concerning the documents annexed to the memorandum of law, untethered to an affidavit as required by the rules, the result is unchanged:

Plaintiff is *not* WGNA. "[A] party who assigns its rights is no longer the real party in interest with respect to an action upon the instrument and retain[s] no right to pursue a claim. . . ." *House of Europe Funding I Ltd. v. Wells Fargo Bank*, No. 13-CV-00519, 2015 WL 5190432, at *7 (S.D.N.Y. Sept. 4, 2015); *see also Nat'l Fin. Co. v. Uh*, 720 N.Y.S.2d 17, 18 (App. Div. 2001) ("Having assigned the note, [plaintiff] was no longer the real party in interest with respect to an action upon the instrument and retained no right to pursue a claim against defendant.")). Simply put, not only is there a failure of proof as to Plaintiff's entitlement to summary judgment on its breach of contract claim against the Individual Defendants—the record actually suggests that *this* Plaintiff has no right to recovery against the Individual Defendants based upon the guarantees. The guarantors may have guaranteed payments to some entity, but there is no proof that Plaintiff is that entity. The claims against the Individual Defendants pursuant to the terms of the guarantees are dismissed. Plaintiff's motion for summary judgment on this claim is therefore denied, and Defendants' motion for summary judgment is, accordingly, granted.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED IN PART and Defendants' motion for summary judgment is GRANTED.

Plaintiff's conversion claim, along with the claims pressed against the Individual Defendants, are dismissed. Summary judgment is granted to Plaintiff on liability only as to its breach of contract claim. The issue of damages on Plaintiff's breach of contract claim remains open and unresolved. That issue will, consequently, proceed to a bench trial.

The trial to determine the amount of damages due Plaintiff shall proceed on **March 20, 2023 at 9:30 a.m.** All parties and counsel shall appear on that date and time in Courtroom 520 of

11

the courthouse located at 300 Quarropas Street, White Plains, New York 10601. The case must therefore be trial ready for that date.

On or before **February 20, 2023**, the parties shall submit to the Court in accordance with the Court's Individual Practices Rule 6(D) the affidavits constituting the direct testimony of each trial witness, as well as the other materials contemplated by the rule. Plaintiff's witness affidavits shall be sworn to by persons with personal knowledge, setting forth through admissible evidence, the precise amount of damages to which Plaintiff asserts it is entitled, and the evidence shall include, *inter alia*, copies of all invoices, statements of account, and proof of any payment made, including those purportedly made by third parties. The remaining Defendant, CCC, shall likewise submit affidavits by persons with personal knowledge of the issue of damages, together with documents in admissible form.

The Clerk of Court is respectfully requested to terminate the pending motion (Doc. 88) and to terminate Venus E. Rodriguez, Juan R. Rodriguez, James Poull, and Geri Poull as Defendants herein.

Dated: White Plains, New York
       September 12, 2022

SO ORDERED:

_____
Philip M. Halpern
United States District Judge